

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**06/28/2010**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **CHRISTINA ANN KEARNEY,** | § | **Case No. 09-36017-H4-7** |
| | § | |
| Debtor. | § | |
| | § | |

---

| | | |
|---|---|---|
| **JAMES H. FLOODY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | **Adversary No. 09-03398** |
| v. | § | |
| | § | |
| **CHRISTINA ANN KEARNEY,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT UNDER § 523(a)(15) OF THE BANKRUPTCY CODE[1]
[Adv. Doc. No. 10]

### I. INTRODUCTION

The issue facing this Court involves what appears to be the latest in a series of disputes continuing since the parties' divorce on September 26, 2005, in the Superior Court of Fulton County, Georgia. [Plaintiff's Ex. No. 5]. Prior to marriage, James H. Floody (the Plaintiff) and Christina Ann Kearney (the Defendant) entered into a prenuptial agreement, in which they agreed that the property located at 12900 Old Course Dr., Roswell, Georgia (the Property) would

---

[1] During the June 10, 2010 hearing, the Court denied Plaintiff's Motion for Collateral Estoppel and Summary Judgment Under § 523(a)(6) of the Bankruptcy Code [Adv. Doc. No. 9], and subsequently, the Plaintiff voluntarily withdrew his right to proceed to trial on the § 523(a)(6) claim. Accordingly, because this Court has decided to grant the Plaintiff's Motion for Summary Judgment under § 523 (a)(15), there is no need for a trial in this adversary proceeding.

1

remain the Plaintiff's sole and separate property (the Prenuptial Agreement). [Plaintiff's Ex. No. 1]. During the pendency of the divorce, on November 21, 2005, the Defendant's attorney filed a *lis pendens* on the Property. [Plaintiff's Ex. No. 4]. The Georgia court entered both the Final Judgment and Decree and the Final Order Effecting Equitable Division of Property in the divorce on February 17, 2006 (the Divorce Decree). [Plaintiff's Ex. No. 5]. In the Divorce Decree, the Georgia court explicitly noted its previous ruling that the Prenuptial Agreement was enforceable. [Plaintiff's Ex. No. 5].

While trying to sell his house in 2008, following the issuance of the Divorce Decree, the Plaintiff discovered that the Defendant never removed the *lis pendens*. [Plaintiff's Ex. No. 6]. On March 27, 2008, the Plaintiff filed a Petition for Citation of Contempt against the Defendant in the same Georgia court, alleging that the Defendant had not removed the *lis pendens* after the Plaintiff's request, and that the *lis pendens* caused a loss of profits from the sale of his home. [Plaintiff's Ex. No. 6]. On June 28, 2008, the Georgia court entered a Temporary Order ordering the Defendant to remove the *lis pendens*. [Plaintiff's Ex. No. 7].

The Defendant then filed the Notice of Dismissal of *Lis Pendens* on July 2, 2008, [Plaintiff's Ex. No. 8] and the parties entered into a settlement agreement. [Plaintiff's Ex. No. 10]. On November 3, 2008, the Georgia court incorporated the terms of that settlement agreement, including the specific terms of payment, in its Final Order on Plaintiff's Motion for Contempt (the First Contempt Order). [Plaintiff's Ex. No. 10]. The Georgia court noted that the Defendant agreed to reimburse the Plaintiff for travel and filing costs associated with the contempt action. [Plaintiff's Ex. No. 6]. The Georgia court also enjoined the parties from engaging in harassing or threatening behavior toward each other. [Plaintiff's Ex. No. 10]. Lastly, and of chief importance, the Georgia court ordered that "the [p]arties are forever barred from

filing or threatening to file any more claims against the other, lawsuits and/or actions which arise out of the marriage and divorce of the parties, except as to the default of this agreement." [Plaintiff's Ex. No. 10].

Despite the settlement and the subsequent court order, the Defendant failed to make the payments toward the debt owed to the Plaintiff that were required under the order. The Plaintiff then filed another Petition for Citation of Contempt in the same court, alleging that the Defendant had not complied with the payment terms of the First Contempt Order. [Plaintiff's Ex. No. 11]. In response, the Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction. [Plaintiff's Ex. No. 13]. The Georgia court held a hearing in the case on June 23, 2009, and subsequently entered the Final Order Re: Contempt (the Second Contempt Order) on July 15, 2009. [Plaintiff's Ex. No. 15]. The Georgia court, pursuant to section 9-10-91(5) of Georgia's long arm statute, held that a Georgia state court may exercise personal jurisdiction over any non-resident "with respect to proceedings for alimony, child support, or division of property in connection with an action for divorce." [Plaintiff's Ex. No. 15]. Rejecting the Defendant's personal jurisdiction argument, the Georgia court ruled that the issue was a "contempt arising out of an [o]rder of the [c]ourt in relation to the parties['] divorce case." [Plaintiff's Ex. No. 15].

On August 19, 2009, the Defendant filed a Chapter 7 bankruptcy petition in this Court. [Case No. 09-36017-H4-7, Doc. No. 1]. The Defendant listed the $10,000.00 owed to the Plaintiff as an unsecured debt incurred on June 4, 2008. [Case No. 09-36017-H4-7, Doc. No. 2].

## II. PROCEDURAL BACKGROUND

On October 6, 2009, the Plaintiff, representing himself *pro se*, initiated this adversary proceeding under § 523(a)(6) and § 523(a)(15).[2] [Adv. Doc. No. 22]. On March 29, 2010, the Plaintiff filed his Motion for Collateral Estoppel and Summary Judgment Under § 523(a)(6) of the Bankruptcy Code [Adv. Doc. No. 9] and Motion for Collateral Estoppel and Summary Judgment under §523(a)(15) of the Bankruptcy Code (the Motion) [Adv. Doc. No. 10]. On April 14, 2010, the Defendant, representing herself *pro se*, filed Defendant's Answer to Plaintiff's Motion for Collateral Estoppel And Summary Judgment Under § 523(a)(6) of the Bankruptcy Code. [Adv. Doc. No. 11]. The Defendant also filed Defendant's Answer to Plaintiff's Motion for Collateral Estoppel and Summary Judgment Under § 523(a)(15) of the Bankruptcy Code (the Response). [Adv. Doc. No. 12].

In the Motion, the Plaintiff asserts twelve factual allegations, alleging that each element of collateral estoppel as applied to § 523(a)(15) is met. [Adv. Doc. No. 10]. The Defendant has denied the allegation that the Defendant filed a *lis pendens* on the Property, and responded to the remaining allegations only by summarily asserting that they "ha[ve] no merit as to the dischargeability of this case." [Adv. Doc. No. 12]. The Defendant attached no affidavits or documentary evidence in contravention of the exhibits that the Plaintiff attached to the Motion.[3]

---

[2] Unless otherwise noted, all section references refer to 11 U.S.C. and all references to the "Code" or the "Bankruptcy Code" refer to the United States Bankruptcy Code.

[3] The Plaintiff attached the following as exhibits and documentary evidence to the Motion: (1) a copy of the notarized Pre-Nuptial Agreement dated June 22, 2002; (2) a copy of the file-stamped Complaint for Divorce filed in the Superior Court of Fulton County, State of Georgia, Family Division, dated September 26, 2005; (3) a copy of Petitioner's Motion & Brief to Enforce Prenuptial Agreement; (4) a copy of the file-stamped Final Judgment and Decree issued by the Superior Court of Fulton County, State of Georgia, Family Division, dated February 20, 2006; (5) a copy of the file-stamped Final Order Effecting Equitable Division of Property issued by the Superior County of Fulton County, State of Georgia, Family Division, dated February 20, 2006; (6) a copy of the file-stamped *Lis Pendens* Notice, filed on Nov. 21, 2005; (7) a copy of a letter dated April 26, 2007, from Plaintiff to Defendant's attorney, Daryl Kidd, requesting a release of the *lis pendens* from the property; (8) a copy of a letter dated April 30, 2007, from the Plaintiff to the Defendant's attorney, Felicia Rowe, requesting a release of the *lis pendens* from the property; (9) a copy of a letter dated May 16, 2007, from the Plaintiff to the Defendant, requesting a release of the *lis*

4

### III. CONCLUSIONS OF LAW

**A. Jurisdiction and Venue**

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (J), (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1409(1).

---

*pendens* from the property; (10) a copy of a certified mail envelope addressed to the Defendant stamped "return to sender"; (11) a copy of a receipt showing certified mail sent to Felicia Rowe from the Plaintiff; (12) a copy of the file-stamped Petition for Citation of Contempt filed in the Superior Court of Fulton County, State of Georgia, Family Division on March 27, 2008; (13) a copy of Verification of the filing of the Petition for Citation of Contempt on March 27, 2008; (14) a copy of a file-stamped Rule Nisi filed by the Plaintiff; (15) a copy of the Temporary Order from the Superior Court of Fulton County, State of Georgia, Family Division, dated June 25, 2008; (16) a copy of a Certificate of Service from the Defendant's attorney, Felicia Rowe, regarding the Notice of Dismissal of the *Lis Pendens* dated June 30, 2008; (17) a copy of the file-stamped Notice of Dismissal of the *Lis Pendens* filed in the Superior Court of Fulton County, State of Georgia, dated June 30, 2008; (18) a copy of a letter from the Defendant's attorney, Felicia Rowe, to the Plaintiff discussing the $10,000.00 settlement offer, dated September 16, 2008; (19) a copy of a letter from the Plaintiff to the Defendant's attorney, Felicia Rowe, confirming that the parties had reached a settlement agreement, dated October 27, 2008; (20) a copy of the Final Order on Plaintiff's Motion for Contempt filed in the Superior Court of Fulton County, State of Georgia, dated November 3, 2008; (21) a copy of the file-stamped Petition for Citation of Contempt filed by the Plaintiff in the Superior Court of Fulton County, State of Georgia, Family Division, dated February 4, 2009; (22) a copy of the file-stamped Motion for Continuance filed by the Defendant in the Superior Court of Fulton County, State of Georgia, Family Division, dated May 1, 2009; (23) a copy of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction; (24) a copy of the file-stamped Answer to Motion for Lack of Jurisdiction and Continuance filed by the Plaintiff in the Superior Court of Fulton County, State of Georgia, Family Division, dated June 3, 2009; (25) a copy of the file-stamped Final Order Re: Contempt entered into by the Superior Court of Fulton County, State of Georgia, Family Division, dated July 15, 2009; and (26) a copy of the file-stamped Notice of Compliance Hearing entered into by the Superior Court of Fulton County, State of Georgia, Family Division on July 15, 2009.

**B. Summary Judgment Standard**

A motion for summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. PRO. 56(c). In deciding a summary judgment motion, the court draws all inferences in favor of the non-movant. *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). Once a summary judgment motion is made, the non-movant "must do more than simply show that there is some metaphysical doubt as to material facts." *In re Gharbi*, Adv. No. 08-01099, 2010 WL 1544294, at *2 (Bankr. W.D. Tex. April 19, 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986)). To avoid summary judgment, the non-moving party must respond with "specific facts indicating a genuine issue for trial." *Id.* (citing *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006)). Furthermore, the Fifth Circuit has adopted the Sixth and Ninth Circuit positions that the court has no obligation to inform *pro se* parties of the possible consequences of a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

**C. The Motion is Meritorious and Should be Granted.**

1.     Section 523 (a)(15)

In order to succeed on the Motion, the Plaintiff, as the movant, has the burden to prove that there is no genuine issue of material fact at issue as to each element of collateral estoppel as applied to § 523(a)(15). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Under § 523(a)(15), a debtor may not receive a discharge of a debt "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the

course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record." 11 U.S.C. § 523(a)(15).

Though the Fifth Circuit has held that a central principle of bankruptcy is that exceptions to discharge should be construed in the debtor's favor, § 523 lists debts that are statutorily non-dischargeable. *Matter of Hudson,* 107 F.3d 355, 356 (5th Cir. 1997).  Of particular importance to this suit are the provisions that address debts between former spouses. The first of these provisions is § 523(a)(5), which excepts those debts that are "for a domestic support obligation." ("Domestic support obligation" is defined as a debt "in the nature of alimony, maintenance, or support . . . owed to . . . [a] spouse, former spouse, or child of the debtor." 11 U.S.C. § 101(14)(a)).

As the Fifth Circuit noted in *Evert*, Congress amended § 523 in 1994 by adding § 523(a)(15). *See In re Evert*, 342 F.3d 358, 368 (5th Cir. 2003). As the *Evert* court stated, the amendment "reflects Congressional recognition that there are inter-spousal payment obligations arising out of but continuing after divorce which are not alimony, support or maintenance and which thus do not fall within § 523(a)(5)." *Id.* at 371 n.5. Thus, § 523(a)(15) includes those debts that would fall outside the scope of the other statutory provisions addressing domestic support obligations. Both § 523(a)(5) and (15) illustrate "Congress balanc[ing] two public policies . . . the Bankruptcy Code's purpose of providing a fresh start to a deserving debtor; and the importance of a debtor's obligations to his family." *In re Brooks*, 371 B.R. 761, 766 (N.D. Tex. 2007) (citing *Marrama v. Citizens Bank,* 127 S.Ct. 1105, 1107 (2007)). Both provisions work to prevent the non-debtor spouse from being "left out-of-pocket because of a debtor's bankruptcy filing." *Id.* at 767.

7

With Congress's public policy in mind, exceptions to discharge must nevertheless be narrowly read to ensure the debtor a fresh start. *See id.* at 766 (citing *Hudson,* 107 F.3d at 356). In fact, at least one bankruptcy court has rejected a broad reading of § 523(a)(15). *See In re Tracy*, Case No. 06-8040, 2007 WL 420252, at *2 (Bankr. D. Idaho Feb. 2, 2007). In *Tracy*, the debtor's former spouse sought a determination from the bankruptcy court that the debt owed to him pursuant to a state court judgment regarding personal property left in the parties' marital home was nondischargeable. *Id.* at *1. The defendant argued that § 523(a)(15) excluded from discharge any debt "arising under *any* order of a court to a former spouse." *Id.*

The *Tracy* court rejected this approach as too broad and held that in order for the debt to be nondischargeable under § 523(a)(15), the plaintiff had to prove that the debts "were incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement or divorce decree or other order of a court of record." *Id.* at *3 (citing *Gamble v. Gamble (In re Gamble)*, 143 F.3d 223, 225 (5th Cir. 1998)). The *Tracy* court noted that although the debts owed to the plaintiff arose out of a dispute regarding the parties' property rights subsequent to their divorce, the parties began a new relationship as landlord and tenant when the plaintiff rented the home to the defendant. *Id.* In *Tracy,* the court concluded that because the debts actually arose out of the parties' subsequent dealings as landlord and tenant, the debts were unrelated to the dissolution of their marriage. *Id.*

The issue in *Tracy* is the same issue facing this Court: *i.e.* whether the debt owed to the Plaintiff by the Defendant arises out of the dissolution of the parties' marriage. Though the debt Defendant owes Plaintiff also arose after the parties' divorce, it does not arise out of a changed relationship between them after their divorce. Rather, the debt arises out of a disagreement that began soon after the parties' divorce in relation to a filing of a *lis pendens* on the Property made

8

*during* the divorce. Stated differently, the debt arises from an action which the Plaintiff brought against the Defendant after their divorce was final, but which related to an act (*i.e.* the filing of the *lis pendens*) that was taken during the pendency of the divorce and which clearly should have been undone by another act (*i.e.* the filing of a release of the *lis pendens*) due to the divorce decree's award of the home entirely to the Plaintiff. Thus, this Court finds that the debt Defendant owes Plaintiff arises out of their divorce. The Plaintiff, however, has sought summary judgment based on collateral estoppel as applied to the § 523(a)(15) claim, so the Plaintiff must show that each element of collateral estoppel is satisfied as it applies to § 523(a)(15)'s requirement that the debt arise out of the parties' divorce.

    2.   <u>Collateral Estoppel</u>

    The key point in dispute is whether collateral estoppel applies—if it does, this Court must, as a matter of law, find the debt to be nondischargeable under § 523(a)(15). Importantly, the principles of collateral estoppel apply in discharge exception proceedings in bankruptcy. *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991). If the issue to which collateral estoppel will apply was litigated in state court, bankruptcy courts apply the requirements under that state's law for collateral estoppel. *In re Olivarez*, Case No. 09-1025, 2010 WL 796934, at *3 (Bankr. W.D. Tex. March 4, 2010). Thus, this Court will apply Georgia's law of collateral estoppel. Under Georgia law, collateral estoppel is applicable if the following four elements are satisfied: (1) there must be an identity of issues between the first and second actions; (2) the duplicated issue must have been actually and necessarily litigated in the prior court proceeding; (3) determination of the issue must have been essential to the prior judgment and; (4) the party to be estopped must have had a full and fair opportunity to litigate the issue in the course of the earlier proceeding.

*Sterling Factors, Inc. v. Whelan*, 245 B.R. 698, 704 (N.D. Ga. 2000). Each element of collateral estoppel is addressed in turn.

### *(i). There must be an identity of issues between the first and second actions.*

With regard to the first element of collateral estoppel, the Plaintiff must show that there is an identity of issues between the first action (*i.e.* the divorce proceeding in Georgia) and the second action (*i.e.* this adversary proceeding (. *See Sterling Factors, Inc. v. Whelan*, 245 B.R. 698, 704 (N.D. Ga. 2000). Unlike *res judicata*, an identity of claims is not required. *City of Demorest v. Roberts & Dunahoo Properties, LLC.*, 288 Ga. App. 708, 713 (Ga. App. 2007). Under the Georgia law of collateral estoppel, an identity of issues is found when the claims contain common elements, especially if the elements are "indistinguishable." *See, e.g., Matter of Graham*, 191 B.R. 489, 495 (Bankr. N.D. Ga. 1996); *see Sterling Factors, Inc. v. Whelan*, 245 B.R. 698, 705(N.D. Ga. 2000). More specifically, when "the same set of facts apply as to the question decided by the [prior] court," collateral estoppel may apply. *Oxendine v. Elliot*, 170 Ga. App. 422, 431 (1984) (citing *Woods v. Delta AirLines*, 237 Ga. 332, 378 (1976)).

The Plaintiff asserts that the first action is represented by the Georgia court order--*i.e.* the First Contempt Order--entered into by the Superior Court of Fulton County. [Adv. Doc. No. 10]. In the Motion, the Plaintiff states that he "obtained a judgment of $10,000 for Contempt of Court for matters related to property settlement in a divorce case." [Adv. Doc. No. 10]. In the Plaintiff's Petition for Citation of Contempt, the Plaintiff stated that "the Order and Prenuptial Agreement provide that the property . . . is the sole and personal property of [the Plaintiff]." Furthermore, in the First Contempt Order, the Georgia court finds personal jurisdiction because the cause of action arose out of the parties' divorce, and states that "[i]t is a contempt ***arising out***

*of an [o]rder of this [c]ourt in relation to the parties' divorce case* that was entered into on November 3, 2008." [Plaintiff's Ex. No. 10] (emphasis added) .

Most important to the outcome of the suit at bar is the language in the First Contempt Order. There, the Georgia court specifically found that the settlement agreement that the parties negotiated resulted directly from their divorce; moreover, that court ruled that the parties were "forever barred from filing or threatening to file *any more* claims against the other, lawsuits and/or actions *which arise out of the marriage and divorce of the parties*, except as to the default of this agreement." [Plaintiff's Ex. No. 10] (emphasis added). This language—included in both contempt orders—indicates that the Georgia court twice made findings that the debt owed to the Plaintiff arose out of the parties' divorce. The Georgia court's findings strongly persuade this Court that there is an identity of issues. Importantly, the Defendant submitted no controverting evidence in the Response. Thus, there is no genuine issue of material fact as to whether there is a sufficient identity of issues between the cause of action in Georgia and the cause of action in this Court.

> *(ii). The duplicated issue must have been actually and necessarily litigated in   the prior court proceeding.*

The second element of collateral estoppel is that the duplicated issue must have been actually and necessarily litigated in the prior court proceeding. *Matter of Graham*, 191 B.R. 489, 495 (Bankr. N.D. Ga. 1996). To succeed on a collateral estoppel claim, a plaintiff must prove that the issues in dispute, though they may arise out of different claims, have been adjudicated. *See Boozer v. Higdon*, 252 Ga. 276, 278 (Ga. 1984) (citing *Spence v. Ervin*, 200 Ga. 672, 673 (Ga. 1946)). Adjudication is not limited to full-blown trials, and Georgia courts hold that settlement agreements constitute adjudication. *See e.g., City of Demorest v. Roberts & Dunahoo*

*Properties, LLC*, 288 Ga. App. 708, 713 (Ga. App. 2007). In Georgia, "settlement is, in and of itself, generally construed to be a final disposition of any claim against a party to settlement . . . arising out of the subject incident, unless remaining claims are specifically reserved by any of the parties." *Id.* at 711. In addition, when courts have incorporated the settlement agreement into an order, thereby "giving full force, effect, and validity" to the agreement, collateral estoppel has applied. *Id.* at 713.

In the instant suit, the Plaintiff and the Defendant entered into a settlement agreement with regard to the Plaintiff's claim for contempt. [Plaintiff's Ex. No. 10]. The First Contempt Order begins by stating that parties "participated in informal mediation and [] agreed to the following [terms]." [Plaintiff's Ex. No. 10].  The order continues by setting out the specific payment terms of the parties' settlement agreement, enjoining the parties from certain behavior, and finally, barring the parties from filing any more lawsuits against each in connection with their divorce. [Plaintiff's Ex. No. 10]. In sum, the Georgia court gave the parties' settlement agreement "full force, effect, and validity" of an adjudication under Georgia law. Moreover, the language in the First Contempt Order lends credence to the position that the parties executed the settlement agreement to settle what they and the Georgia court considered to be a dispute arising out of their divorce. [Plaintiff's Ex. No. 10].

The issue of whether the debt arose out of the parties' divorce was doubtlessly litigated at least twice, in two different contempt proceedings in the Georgia court. The Defendant has submitted no evidence controverting the Plaintiff's summary judgment evidence as to this issue. Therefore, there is no genuine issue of material fact as to whether the duplicated issue was actually litigated; it was.

*(iii). The determination of the issue must have been essential to the prior judgment.*

The third element of collateral estoppel is that the determination of the issue in dispute must have been essential to the prior judgment. *Matter of Graham*, 191 B.R. 489, 495 (Bankr. N.D. Ga. 1996) (citing *Kent v. Kent*, 265 Ga. 211, 211—12 (Ga. 1995)). For example, in *Kent*, the Georgia court decided a contempt issue brought by the wife against her husband when he stopped making alimony payments. *Kent*, 265 Ga. at 211. The husband argued that pursuant to the parties' settlement agreement, which was incorporated into the divorce decree, alimony payments would cease if the wife cohabitated with another man. *Id.* Unsuccessful at the contempt proceedings, the husband appealed. *Id.* On appeal, the wife alleged that collateral estoppel barred the husband from raising the cohabitation issue. *Id.* The Georgia court agreed and noted that although the issue of cohabitation was not the focus of the contempt proceeding, the court must have necessarily determined some underlying issues raised by the previous orders to decide if a party was in fact in contempt of those orders. *Id.* at 211—12.

Applying *Kent*'s logic to the suit at bar, the determination of whether the debt arose from the parties' divorce was essential to the contempt judgments issued by the Georgia court. In *Kent*, the court specifically noted that although a contempt proceeding focuses on compliance with a prior judgment of the court, what constitutes the judgment of that court forms the basis of the inquiry of the issue of contempt. A court may not decide a contempt action without considering both the prior order and whether the defendant's actions complied with that order. Thus, when the Georgia court in the Second Contempt Order found the Defendant in contempt, it necessarily had to determine with what provision from the First Contempt Order the Defendant had failed to comply. That finding must have been based on the settlement agreement

incorporated into the First Contempt Order, which unambiguously refers to the debt the subject of this dispute as arising out of the parties' divorce. [Plaintiff's Ex. No. 15]. Furthermore, in order to exercise personal jurisdiction over the Defendant in the Second Contempt Order, the Georgia court had to find that the dispute arose out of the parties' Georgia divorce. [Plaintiff's Ex. No. 15].

In conclusion, both the First and Second Contempt Orders indicate that deciding the issue of whether the debt arose from the divorce was essential to the Georgia court's decisions to hold the Defendant in contempt twice. Though the Defendant argued at the June 10, 2010 hearing that the debt had nothing to do with the divorce, the Defendant submitted no evidence to controvert the documents from the Georgia court attached as exhibits to the Motion. Thus, this Court concludes that no genuine issue of material fact remains as to whether the determination of the debt arising from the parties' divorce was essential to the prior proceeding. It clearly was.

> *(iv). The party to be estopped must have had a full and fair opportunity to litigate the issue in the course of the earlier proceeding.*

The fourth element is that the party to be estopped must have had a full and fair opportunity to litigate the issue in the course of the earlier proceeding. *Watts v. Lippitt*, 171 Ga. App. 578, (Ga. App. 1984) (citing *Poster Exchange, Inc. v. Nat. Screen Serv. Corp.*, 517 F.2d 117, 122—23 (5th Cir. 1975) (stating that fairness in the original litigation indicates the party had a full opportunity to litigate)). In *Matter of Graham*, the court held that evidence showing a party "had every possible chance to litigate the state action completely" demonstrates a fair and full opportunity. *Matter of Graham*, 191 B.R. 489, 496 (Bankr. N.D. Ga. 1996). More specifically, a party's actions during the prior proceeding can satisfy this element. *See In re Bush*, 62 F.3d 1319, 1325 (11th Cir. 1995). In *Bush*, the court noted that the defendant's actions,

including retaining counsel, answering complaints, filing a counterclaim, and filing discovery requests, showed "active participat[ion] in the adversary process." *Id.* at 1325.

In the instant suit, the Defendant has actively participated in the litigation process beginning with the onset of the parties' divorce in 2005. The Defendant was represented by counsel during the divorce and that particular counsel filed the *lis pendens*. The Defendant later retained different counsel and was represented during both contempt proceedings. In fact, the First Contempt Order is signed by Defendant's counsel (Felicia P. Rowe)."[4] [Plaintiff's Ex. No. 10]. In fact, the language next to the signature block further indicates that the Defendant's counsel actually drafted the settlement agreement which the Georgia court later incorporated into the order. Furthermore, when the Defendant had no counsel at the second contempt proceeding, she filed court documents, including a Motion for Continuance and a Motion to Dismiss for Lack of Personal Jurisdiction, with a supporting affidavit. [Plaintiff's Ex. No. 13]. Viewing all of this evidence in the light most favorable to the Defendant, this Court concludes that there remains no genuine issue regarding whether the Defendant had a full and fair opportunity to litigate in the prior Georgia court proceeding.

## IV. CONCLUSION

In sum, the Court finds that the $10,000.00 debt that the Defendant owes to Plaintiff is a nondischargeable debt under § 523(a)(15) because it arose out of the parties' divorce. Furthermore, the Court finds that collateral estoppel applies because the Georgia court necessarily adjudicated the question of whether the debt arises out of the parties' divorce in the

---

[4] It should be noted that Ms. Rowe signed this order as "Prepared By Felicia P. Rowe, Attorney for Plaintiff." It is apparent that Ms. Rowe erred when she signed as the Plaintiff's attorney on this document. There is no question that Ms. Rowe was *not* the attorney for the Plaintiff (i.e. Floody), but rather was the attorney for the Defendant (i.e. Kearney). Indeed, other exhibits and evidentiary documents reflect that Ms. Rowe signed as the attorney for the Defendant. [Plaintiff's Ex. Nos. 8 & 9].

15

prior contempt proceedings.  Therefore, for the reasons set forth above, this Court concludes that the Motion should be granted.  An order consistent with this Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 24th day of June, 2010.

Jeff Bohm
United States Bankruptcy Judge